2001-NMSC-005

17 P.3d 437

**ALBUQUERQUE JOURNAL, Associated Press, KRQE, KOAT and The Albuquerque Tribune, Petitioners,**

v.

**Hon. Tommy JEWELL, District Judge, Respondent,**

and

**State of New Mexico, ex rel., Children, Youth, and Families Department, Anamarie M., a minor child, and concerning Adella M. and Miguel M., Real Parties in Interest.**

No. 26,553.

Supreme Court of New Mexico.

Jan. 24, 2001.

Dines, Gross, Esquivel, P.C., Martin R. Esquivel, Albuquerque, NM, for Petitioners.

Patricia A. Madrid, Attorney General, Bennett Cohn, Assistant Attorney General, Santa Fe, NM, for Respondents.

Troy Prichard, Albuquerque, NM, Kevin Martinez, Grants, NM, Diane Garrity, General Counsel, Daniel J. Pearlman, Peter Klages, Children's Court Attorneys, Santa Fe, NM, for Real Parties in Interest.

Kari Converse, Albuquerque, NM, Guardian ad Litem.

Ashley Guathier, Lucy Dalglish, Gregg Leslie, Arlington, VA, for Amicus Curiae, The Reporters Committee for Freedom of the Press.

## OPINION

PER CURIAM.

{1} On September 6, 2000, Petitioners Albuquerque Journal, Associated Press, KRQE, KOAT, and Albuquerque Tribune filed a petition for a writ of prohibition or superintending control and request for stay. Petitioners sought to have this Court overturn the children's court's exclusion of the press from the courtroom in, and entry of a gag order prohibiting all parties from commenting on, the highly publicized child abuse and neglect case of Anamarie M. We denied this petition without comment. Petitioners subsequently requested reconsideration; Petitioners also requested that we review the transcript of the proceedings. Having reviewed the transcript, we now address the substance of Petitioners' claims.

## I. Exclusion of the Media from the Courtroom

{2} On September 5, 2000, the children's court prohibited the media from attending all of the court proceedings in Anamarie M.'s case. The court noted that NMSA 1978, § 32A–4–20(D) (1999) conditions media access on a requirement that the press refrain from divulging information that would identify a child, parent, guardian, or custodian, a condition which could not be met in this case due to the extensive pre-hearing media coverage of Anamarie M.'s case. The court then found that further coverage of Anamarie M.'s case in the media would not be in the best interests of the child and excluded the media from the courtroom. Petitioners challenge this exclusion.

{3} Section 32A–4–20(D) provides that:

Accredited representatives of the news media shall be allowed to be present at closed hearings, subject to the condition that they refrain from divulging information that would identify any child involved in the proceedings or the parent, guardian or custodian of that child and subject to enabling regulations as the court finds necessary for the maintenance of order and decorum and for the furtherance of the purposes of the Children's Code [this chapter].

Petitioners concede that any media coverage of the proceedings would identify parties in this case because of the extensive pre-hearing media coverage. Petitioners argue that their inability to comply with the statutory preconditions regarding confidentiality renders this part of Section 32A–4–20(D) moot. They further argue that because the confidentiality provision is moot, it should be read out of the statute, thereby creating a mandatory right of access to the proceedings. We disagree.

{4} Historically, the media has not enjoyed a right of access to child abuse and neglect proceedings, which have been traditionally closed to both the media and the public. *See, e.g., State ex rel. Dispatch Printing Co. v. Solove,* 52 Ohio St.3d 6, 556 N.E.2d 439, 449 (1990) ("The United States Supreme Court has repeatedly recognized that juvenile court proceedings have historically been closed to the public.") (citing *Smith v. Daily Mail Publ'g Co.,* 443 U.S. 97, 105, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979); *Davis v. Alaska,* 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Kent v. United States,* 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966)). Section 32A–4–20(D) grants the media a limited statutory right of access to child abuse and neglect proceedings. The right of access enables the public, through the media, to monitor proceedings in order to help ensure that the system as a whole is functioning properly. This right of access is conditioned on a requirement of confidentiality for the child and the child's parent, guardian, or custodian. The requirement of confidentiality affords individual children and their families privacy and enables the State to comply with federal requirements that states provide safeguards to restrict the use and disclosure of information regarding children receiving foster care and adoption assistance under Title IV-E of the Social Security Act. *See* DHHS Policy Interpretation Question, ACF–CB–PIQ98–01 (June 29, 1998).

■ {5} This evaluation of the goals underlying the enactment of Section 32A–4–20(D) leads us to the conclusion that confidentiality is a necessary precondition to media access to child abuse and neglect proceedings. These interests survive despite the extensive pre-hearing media coverage. We therefore reject Petitioners' contention that where confidentiality cannot be maintained a mandatory right of access is created in the media. Where confidentiality cannot be maintained, as is the case here, the media enjoys no statutory right of access. In the absence of a statutory right of access, the children's court was within its discretion under Section 32A–4–20(D) to decide whether to allow the media to attend the proceedings. Petitioners do not contend that the court abused its discretion in finding that media coverage of the proceedings was not in Anamarie M.'s best interests. Accordingly, we hold that the court properly exercised its authority in excluding the media from the proceedings.

## II. The Gag Order

{6} In early September 2000, all parties [1] to the proceeding made clear to the children's court their desire to have the court enter a gag order to relieve them from the extensive media attention surrounding this case. In response to the parties' request, the court entered an oral gag order prohibiting all parties from commenting on the case. On September 5, 2000, all parties stated their concurrence in, and gratitude for, the Court's entry of the gag order on the record. On September 28, 2000, Anamarie M.'s parents made it known to the court that their position on the gag order had changed and that they sought to have the gag order lifted. The court acknowledged the parents' change in position but expressed doubt about whether it had jurisdiction to amend the gag order because the propriety of the gag order was before this Court on Petitioners' motion for rehearing on the extraordinary writ. Respondent mother subsequently moved to have the gag order lifted as it pertained to her.[2] The children's court granted the motion on November 1, 2000, indicating that it wanted the parties to focus on the reunification of the family rather than First Amendment issues. On November 3, 2000, the court stayed the modification of the gag order with regard to Respondent mother because the court believed it had no jurisdiction to amend the order.

■ {7} Petitioners challenge the ongoing gag order as procedurally deficient be-

---

1. The parties included the State of New Mexico (represented by the Children, Youth and Families Department), the child Anamarie M. (represented by a Guardian Ad Litem), and Respondent parents (represented by private counsel).

2. Respondent father, represented at this time by separate counsel than Respondent mother, had withdrawn his earlier application to have the gag order lifted as it pertained to him.

cause the judge made no factual findings supporting the existence of a compelling state interest and did not consider less restrictive alternatives. We agree that a court may not use a gag order to silence a willing speaker unless it makes detailed factual findings supporting the existence of a compelling state interest and concludes that less restrictive alternatives would not advance that interest. *See Twohig v. Blackmer,* 1996–NMSC–023, ¶ 26, 121 N.M. 746, 918 P.2d 332 (vacating a gag order because it lacked specific findings to support the conclusion that a gag order was necessary for a fair and impartial trial and because the order did not indicate that the court considered alternatives less restrictive of free speech rights than an outright ban on all communications with the media). By withdrawing their stipulation to the gag order, Respondent parents indicated their willingness to speak to the media. The gag order imposed is therefore procedurally deficient, and must be dissolved. We express no opinion as to whether factual findings would have been necessary to support a gag order to which all parties had stipulated.

 {8} Based upon our review of the transcripts, it appears that the children's court understood that the gag order could not be continued subsequent to the withdrawal of the stipulation to the gag order by Anamarie M.'s parents. The gag order remained in place, however, because the children's court did not believe it had jurisdiction over the order once the matter came before this Court. The children's court's confusion is understandable due to the very limited amount of case law on this issue. We now address this issue to provide clarification. In accordance with Rule 12–504(D)(1) NMRA 2001, a party seeking a stay of some action by the respondent pending the initial hearing on an extraordinary writ must include a request for a stay in its petition. Petitioners' original motion brought on September 6, 2000 sought a stay of action by the children's court. We denied this request. By denying Petitioners' request for a stay, we gave license to the children's court to continue to exercise jurisdiction over the gag order. Petitioners' subsequent motion for reconsideration of our denial of the petition for writ did not include a request for a stay. Accordingly, the children's court retained jurisdiction over the gag order, notwithstanding our consideration of its propriety.

### III. Conclusion

{9} We affirm the children's court's exclusion of the media from the courtroom and its initial entry of the stipulated gag order. We clarify that the petition for an extraordinary writ did not divest the children's court of jurisdiction over the gag order. In accordance with our power of superintending control, we find the gag order invalid as currently constituted and order it dissolved. We remand the matter to the children's court for entry of necessary factual findings in support of a gag order if it wishes to reinstate a gag order.

{10} **IT IS SO ORDERED.**